[No. G018929. Fourth Dist., Div. Three. Nov. 26, 1996.]

THE PEOPLE ex rel. DEPARTMENT OF FISH AND GAME et al.,
Plaintiffs and Respondents, v.
ATTRANSCO, INC., Defendant and Appellant.

**COUNSEL**

Williams, Woolley, Cogswell, Nakazawa & Russell, David E. R. Woolley, Blake W. Larkin and Todd A. Valdes for Defendant and Appellant.

Dennis F. Moss as Amicus Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, Charles W. Getz IV and Jan S. Stevens, Assistant Attorneys General, Sylvia Cano Hale, Deputy Attorney General, Hedges & Caldwell, Mary Newcombe and Michael R. Leslie for Plaintiffs and Respondents.

## OPINION

SILLS, P. J.—After the American Trader ran aground off Huntington Beach and released thousands of gallons of crude oil, several state agencies represented by the Attorney General sued the owner of the ship to recover cleanup costs. Then commenced a paper war—or, more precisely, a war by paper. Instead of oil, now it was paper that gushed. Tens of thousands of pages of documents were produced in discovery; numerous motions were fought. The private lawyers for the shipowner deluged their civil servant opponents with successive court proceedings.

One of the state agency plaintiffs, the Department of Fish and Game, sought reinforcements. After receiving written permission from the Attorney General, the department employed an outside law firm to help it counter the shipowner's oppressive litigation tactics. Eighteen months later, the shipowner launched a strike at the department's new troops by moving to disqualify them. The shipowner's legal theory was their involvement violated a provision of the Government Code section 12520,[1] which forbids the Attorney General from employing special counsel. When the attack failed and the trial court denied the motion to disqualify, the shipowner brought this appeal.[2]

We affirm. As explained below, section 12520 does not forbid the Department of Fish and Game from employing outside counsel when it first receives the written permission of the Attorney General.

The shipowner also contends that the employment of the outside law firm violates civil service contracting law, specifically section 19130. Again, the contention has no merit; indeed, and somewhat ironically, section 19130 supplies the very justification for not applying normal civil service hiring

---

[1] All statutory references are to the Government Code.

[2] Orders denying motions to disqualify counsel are appealable because they are final orders on collateral matters. (*Meehan* v. *Hopps* (1955) 45 Cal.2d 213, 215-217 [288 P.2d 267]; *Metro-Goldwyn-Mayer, Inc.* v. *Tracinda Corp.* (1995) 36 Cal.App.4th 1832, 1838 [43 Cal.Rptr.2d 327].)

procedures to this case. One of the exceptions to the civil service contracting law, as set forth in section 19130, is for when there is an urgent need for the services of a private contractor (see § 19130, subd. (b)(10)), and such a need is certainly present here.

## FACTS

On February 7, 1990, while mooring at an oil berth off the coast of Huntington Beach, the steam tanker American Trader ran aground and released some 400,000 gallons of crude oil into state waters. The oil spill was declared a local and state emergency. Various state agencies were mobilized and began cleanup operations.

In 1991, the Department of Fish and Game, the Department of Parks and Recreation, the California Regional Water Quality Control Board, the State Coastal Conservancy, and the State Lands Commission, as relators through the Attorney General's office,[3] together with several local government entities, sued the owner and operator of the American Trader, Attransco, and several other corporations for environmental damages, civil penalties and attorney fees.[4] For the first three years of the litigation, the Attorney General was sole legal counsel for the state and all five of its agencies.

As the lawsuit progressed, the Attorney General's office recommended to the Department of Fish and Game that it seek special counsel to assist it in representing the department's interests. In April 1994, the Department of Fish and Game associated the law firm of Hedges & Caldwell as cocounsel.

Eighteen months later, in October 1995, Attransco filed a motion to disqualify Hedges & Caldwell, arguing the Attorney General was prohibited by section 12520 from employing special counsel, and the availability of civil service attorneys precluded the Attorney General from granting authorization under section 11040 to the Department of Fish and Game to hire outside counsel.[5] The issue of section 19130 was not raised. The trial court, characterizing the motion as "obstructionistic," denied the motion. Attransco then initiated this appeal.

---

[3] "A relator is a party in interest who is permitted to institute a proceeding in the name of the People or the attorney general when the right to sue resides solely in that official." (*Brown v. Memorial Nat. Home Foundation* (1958) 162 Cal.App.2d 513, 538 [329 P.2d 118, 75 A.L.R.2d 427].)

[4] A year and a half after the accident, American Trading Transportation Co., Inc., the owner and operator of the American Trader, changed its name to Attransco.

[5] Attransco has asked us to take judicial notice of a brief in another case in which the Attorney General may have taken an inconsistent position. The request is denied. The fact a party takes inconsistent legal positions in different actions proves nothing more than that it may have been right—or wrong—in one of them. (See *People* v. *Webb* (1986) 186 Cal.App.3d

DISCUSSION

As it did at the trial level, Attransco contends that section 12520 precludes the Department of Fish and Game from being represented by an outside law firm. When examined in detail, Attransco's argument essentially rests on putting the pieces of statutory jigsaw puzzle together in such a way as to form a circle.

To begin with, the actual *text* of section 12520 does Attransco no good. The statute provides in its entirety: "The Attorney General shall not employ special counsel in any case except pursuant to either of the following: [¶] (a) Article 3 (commencing with Section 12540). [¶] Article 4 (commencing with Section 12550)."[6] There is no reference to the Department of Fish and Game. Only the *Attorney General* is precluded from employing special counsel.[7]

Not to be outdone by the text, Attransco reasons that other statutes, in particular sections 11042 and 11043, force the conclusion that the Department of Fish and Game is absolutely obligated to use *only* the Attorney General. And, because the agency may only use the Attorney General, it follows that any employment of outside counsel by the department is, in essence, the employment of special counsel by the Attorney General, and therefore still in contravention of section 12520.

Section 11043 is part of a small group of five statutes (§§ 11040, 11041, 11042, 11043 & 11044) found in title 2 (government of the State of California), division 3 (executive branch), part 1 (state departments and agencies), chapter 1 (state agencies), article 4 (legal services) of the Government Code. The five statutes are most easily examined in their logical order, not the (somewhat convoluted) order in which they appear in the code.

Section 11042 begins with a basic rule against state agencies using outside counsel: "No State agency shall employ any legal counsel other than the Attorney General, or one of his assistants or deputies, in any matter in which

---

401, 413 [230 Cal.Rptr. 755] (conc. opn. of Sims, J.) ["The good coming of all this is the knowledge that, having taken all conceivable sides on the issue, I must certainly at some point have been right. Unfortunately, it too obviously follows that at some point I must also have been wrong."].)

[6]Neither article 3, dealing with escheated property, nor article 4, dealing with the supervision of district attorneys, has any application to the present case.

[7]"Special counsel" is a term which, as in the present case, refers to outside "counsel hired from the private sector to perform services for the state who are paid out of public funds." (*California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 299-300 [26 Cal.Rptr.2d 153].)

the agency is interested." Section 11044 sets up a backcharge mechanism for the Attorney General to "recover the costs incurred in providing the legal services." Section 11043 states that whenever a law authorizes an agency to employ counsel other than the Attorney General, it shall be construed to refer to the Attorney General: "Except as to the State agencies and laws specified in Section 11041, whenever any law authorizes any State agency to employ legal counsel other than the Attorney General, it shall be construed to refer to the Attorney General. The Attorney General may assign to the State agency assistants or deputies from his staff, under such terms as he deems necessary to conduct the legal business of or render legal counsel to the agency."

Section 11041 exempts a list of state entities (of which the Department of Fish and Game is not one) from the operation of section 11042 or 11043: "Sections 11042 and 11043 do not apply to the Regents of the University of California [etc.] nor to any other state agency which, by law enacted after Chapter 213 of the Statutes of 1933, is authorized to employ legal counsel. . . ."

Finally, section 11040, subdivision (a), opens up some leeway for state agencies, by specifically allowing them to employ counsel *with* the prior written permission of the Attorney General: "This article does not affect the right of any state agency or employee to employ counsel in any matter of the state, after first having obtained the written consent of the Attorney General."

Amendments in 1992 and 1995 (see Stats. 1992, ch. 1287; Stats. 1995, ch. 893) added subdivisions (b) and (c) to section 11040, which tout the importance of using the Attorney General, but set forth no absolute rule forbidding outside counsel from ever being used: "(b) It is the intent of the Legislature that overall efficiency and economy in state government be enhanced by employment of the Attorney General as counsel for the representation of state agencies and employees in judicial and other proceedings. [¶] The Legislature finds that it is in the best interests of the people of the State of California that the Attorney General be provided with the resources needed to develop and maintain the Attorney General's capability to provide competent legal representation of state agencies and employees in any judicial proceeding. [¶] (c) Except with respect to employment by the state officers and agencies specified by title or name in Section 11041 or when specifically waived by statute other than Section 11041, the written consent of the Attorney General is required prior to employment of counsel for representation of any state agency or employee in any judicial proceeding."

There is no doubt in this case but that the Attorney General gave his consent prior to the association of the outside firm in this case.[8] However, to give Attransco's argument its due, the matter is not, as Attransco accurately points out in its opening brief, as simple as referring to section 11040, subdivision (a), and calling it a day. Attransco contends that section 11043 eliminates any authority on the part of a state agency to *ever* employ any legal counsel other than the Attorney General. As we have just seen, section 11043 provides that "whenever any law authorizes any State agency to employ legal counsel other than the Attorney General, it shall be construed to refer to the Attorney General." To complete the statutory circle, Attransco would have us conclude that the effect of section 11043 is to render section 11040's purported authority to hire outside counsel (with the Attorney General's prior written permission, of course) void. And, as Attransco's argument goes, because section 11040 provides no authority to hire outside counsel, section 11042, forbidding outside counsel, controls; the Department of Fish and Game was necessarily then absolutely required to confine itself to the Attorney General, and the Attorney General could not, per section 12520, employ Hedges & Caldwell.

It is a tidy argument, but there is a fatal weakness in Attransco's position. Attransco never confronts the question of precisely what section 11040, subdivision (a) *does* mean in the light of section 11043. Attransco's argument would compel an answer on these lines: Under section 11040, subdivision (a), a state agency (not otherwise listed in section 11041) has the right to employ the Attorney General after first obtaining the Attorney General's written consent.

Which, of course, is ludicrous. In light of section 11042 (flat prohibition against using anyone else other than the Attorney General), section 11040 obviously functions as an exception to a general rule. It makes no sense to first prohibit using counsel other than the Attorney General, then require the Attorney General's written permission to use the Attorney General! Indeed, subdivision (c) of section 11040 reiterates the possibility of using outside counsel as long as the written consent of the Attorney General is first obtained. The flaw in Attransco's logic thus becomes plain enough: Attransco reads section 11043 as a virtual repeal of section 11040.

■ A basic rule of statutory construction is that courts should seek to *reconcile* two apparently conflicting statutes within a given statutory

---

[8]The argument made at pages 11 and 12 of the appellant's opening brief that there is no evidence to sustain the trial court's ruling because the written permission was shown to the trial court in camera and not offered in evidence is nothing less than frivolous. The trial court stated on the record that written permission had been given. By the same token, respondents' request that the written permission be lodged with this court under seal is denied as moot.

scheme, not use one to annihilate the other. (E.g., *In re Thierry S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610] ["Repeals by implication, however, are not favored and there is a presumption against operation of the doctrine . . . . 'They are recognized only when there is no rational basis for harmonizing the two potentially conflicting statutes . . . . The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' "]; *Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377] ["it is settled that there is a presumption against repeal by implication, that to overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent as to prevent their concurrent operation, and that the courts are bound to maintain the integrity of both statutes if they may stand together"]; *Cannon* v. *American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575] ["For purposes of statutory construction, the various pertinent sections of all the codes must be read together and harmonized if possible."].)

Section 11040 and section 11043 are readily reconcilable. Section 11040 affords state agencies "the right" to employ counsel other than the Attorney General; section 11043 means that whenever they are "authorized" to do so, they are also "authorized" to use the Attorney General's services. In other words, the section 11043 is permissive, not mandatory. Section 11040 is therefore not mutually exclusive with section 11043. Section 11043 does not use the word "only," as in "whenever any law authorizes any State agency to employ legal counsel other than the Attorney General, it shall be construed to refer to the Attorney General *only*." If the Legislature wanted to say *that*, it certainly knew how to do so.[9]

Ironically, our conclusion is confirmed by the Supreme Court opinion on which Attransco relies for the idea that there is blanket and absolute prohibition against outside counsel representing state agencies. In *State Compensation Ins. Fund* v. *Riley* (1937) 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R.

---

[9]Because section 11040 may be reconciled with section 11043 by virtue of simple canons of statutory interpretation, there is no need to take judicial notice, as the Department of Fish and Game requests us to do, of the legislative history behind the addition of subdivisions (b) and (c) to section 11040 in 1992. The department's request is therefore denied. The request by itself, however, does reveal a certain irony in Attransco's argument favoring an implied repeal of section 11040, subdivision (a). If section 11043 really is irreconcilable with section 11040, subdivision (a), it is section 11043 that must give way. "When two or more statutes concern the same subject matter and are in irreconcilable conflict the doctrine of implied repeal provides that the most recently enacted statue impliedly repeals the earlier enactment." (*In re Thierry S., supra,* 19 Cal.3d at p. 744.) Clearly, section 11040 has been the most recent beneficiary of the Legislature's scrutiny, and section 11040, subdivision (a) remained intact. As we have already noted, not only do subdivisions (b) and (c) contain nothing which directly affects the operation of subdivision (a), but subdivision (c) reminds the reader of the continued possibility of obtaining outside counsel set out in subdivision (a).

1503], a private tax lawyer contracted with the public agency by which employers can obtain workers' compensation insurance to provide private legal services in the face of an effort by the federal government to tax the agency's earnings. (The secretary of the state fund, Joseph Gallagher, instituted an action before the board of tax appeals to "resist the imposition of the tax," see *id.* at p. 129.) The State Controller, however, refused to pay the tax lawyer and the state agency sought a writ to compel the controller to pay him.

True, as Attransco points out, the ultimate result of the case was that the Supreme Court denied the writ. What Attransco has not pointed out is why. In the first part of the opinion, the Supreme Court established that there was *no blanket rule* against employment of the private attorney. The court noted, "[t]here is no express prohibition in any statute forbidding the employment of additional or special counsel." (9 Cal.2d at p. 131.)[10] Indeed, said the *Riley* court, "it seems clear that the fund has the power to employ special counsel to protect its rights in pending litigation. *The law is well settled that a public agency may employ special counsel to protect its rights, unless specifically prohibited from so doing by statutory or charter provision,* and that it possesses this power whether or not such public agency has a regularly appointed attorney, if such regularly appointed attorney is not specifically charged with the particular duty involved." (9 Cal.2d at p. 131, italics added.) Then, after canvassing a number of cases, the court delivered this conclusion: "From these cases, and many others that could be cited, it is clear that the fund *has* the power to employ special counsel to protect its interests in the Gallagher action." (*Id.* at p. 133, italics added.)

The reason the writ was ultimately denied and the tax lawyer not paid was *not* because the agency lacked the power to employ him, but because the agency had not complied with certain civil service requirements. The fact the agency had the *power* to hire the counsel was "not decisive of the problem presented" by the petition. The question still remained "as to whether or not the fund must employ such counsel through the state personnel board under civil service." (9 Cal.2d at p. 133.) And the answer to that question was yes.

Essentially, the court reasoned that there were no exceptions to the civil service requirements, even though there was an "urgent" and "temporary" need for the tax lawyer's services. (See 9 Cal.2d at pp. 134-135.) "Petitioner

---

[10]Significantly, the predecessor of section 11043, old Political Code section 473a, was in effect at this time (having been enacted in 1933), and set forth language substantially the same as current Government Code section 11043. (See *Evans* v. *Superior Court* (1939) 14 Cal.2d 563, 575 [96 P.2d 107].)

does not refer us to any provision of the Constitution or statute which distinguishes between urgent temporary employment and permanent employment . . . . When civil service was adopted in 1934 by vote of the people, it was unequivocally declared to be the policy of this state that every employee and officer of the state should be included therein with certain enumerated exceptions not here involved." (*Id.* at p. 135.) The court also reasoned that it made no difference that the tax lawyer was an independent contractor rather than an employee. The dispositive question was whether the services were "of such a nature that they could be performed by one selected under the provisions of civil service." (*Ibid.*) The parting shot of the decision was a reference to the "all-embracing civil service law." (*Id.* at p. 136.)

The civil service law today, however, is not quite so "all-embracing" as it was in the Depression when it was enacted and *Riley* was decided. In the early 1980's the Legislature loosened the reins and enacted a provision which, apropos *Riley*, not only "distinguishes between urgent temporary employment and permanent employment," but between employees and independent contractors. Specifically, in 1982, the Legislature added section 19130 to the Government Code, which provides for independent contractors to render services to the state under an enumerated set of conditions. (See Stats. 1982, ch. 1057, § 1, p. 3822.)[11]

Section 19130 is structured in a triad of subdivisions, (a), (b) and (c). Subdivision (a) concerns situations when the state seeks to use independent personal service contractors *only* to achieve cost savings. The statute sets up a gauntlet of 11 conditions, *all* of which must be braved. The opening words of subdivision (a) stress the need to meet all 11 conditions: "Personal services contracting is permissible to achieve cost savings when *all* the following conditions are met:" (Italics added.)

Section 19130, subdivision (b), by contrast, allows personal services contracting when *any* of 10 conditions are met: "Personal services contracting also shall be permissible when any of the following conditions can be met:"

Section 19130, subdivision (c) is short, essentially stating that employees (as distinct from independent contractors) shall "be retained under an appropriate civil service appointment."

---

[11]In its brief, Attransco makes an ostensibly separate argument that section 19130 independently precludes outside counsel here. Respondents counter that the section 19130 issue was not raised at the trial level. We address the section 19130 issue because, as our exegesis of *Riley* demonstrates, it is really inseparable from the section 12520 issue.

One of the conditions of section 19130, subdivision (b) virtually jumps out as applicable to the case at bar. Subdivision (b)(10) allows personal services contracting when "The services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate their very purpose."

It is evident from the record, considered as a whole, that the special counsel employed by the Department of Fish and Game was in response to the urgent need generated by the exigencies of battle. Litigation is full of short deadlines which need urgent, often intensive responses, and every lawyer knows that it is a fact of life that a lawsuit can be won or favorably settled if the opposition cannot respond quickly enough to a hefty motion. (Cf. Napoleon's Art of War (D'Aguilar, trans., Barnes & Noble 1995) p. 19 ["The strength of an army, like the power in mechanics, is estimated by multiplying the mass by the rapidity . . . ."].) Response time can be as important in litigation as it is in war, and response time in litigation is (unfortunately) too often a simple function of the number of lawyers who can be directed to work on a particular matter.

"In tactics," said von Clausewitz, "as in strategy, superiority in numbers is the most common element in victory." (von Clausewitz, On War (Howard & Paret, trans., Princeton U. Press 1976) p. 194.) We are not unmindful of the realities of modern litigation, in which parties in complex litigation can be overwhelmed by the sheer volume of what discovery entails. Litigation by its nature is labor intensive, and there will be times when the Attorney General's office will simply be unable to commit sufficient numbers of lawyers to a given case. It would clearly frustrate the Department of Fish and Game's very purpose in bringing the case in the first place if civil service rules could be used against it to cut off the agency's ability to enlist reinforcements in the battle. (See *California Air Resources Bd.* v. *Hart*, *supra*, 21 Cal.App.4th 289, 299 ["Here, the shortage of staff which prevented the Attorney General from proceeding threatened to extinguish a civil penalty action. Had the Attorney General not delegated the authority to prosecute this action, the Board's ability to enforce the air pollution control laws would be frustrated . . . ."].)

In sum, section 12520 does not preclude the retention of outside counsel by the Department of Fish and Game because the agency had the *power* to retain such counsel under section 11040, subdivision (a), having first obtained the written permission of the Attorney General. Normal civil service procedures did not apply (as they did in *Riley*) because section 19130, subdivision (b)(10), enacted after *Riley*, authorizes personal service contracts

in situations where the "delay incumbent" in the implementation of normal civil service procedures would frustrate the very purpose of the agency in needing those services in the first place. Here, such delay could have meant the loss of an important lawsuit because of an inability to respond to the sheer volume of paper which all too often characterizes complex litigation. (See *Mannino* v. *Superior Court* (1983) 142 Cal.App.3d 776, 778 [191 Cal.Rptr. 163] [expressing concern that the discovery process, if abused, could, "like a cancerous growth . . . destroy a meritorious case or defense"].) Hence there was no error in the trial court's denial of Attransco's motion to disqualify outside counsel.

We need add only one additional consideration. The statutory scheme we have surveyed contains a significant check on the power of state agencies to employ outside counsel, even in urgent situations like the present case, in the form of what is, in effect, the Attorney General's veto by withholding written consent. The importance of the Attorney General's veto power should not be minimized. The power gives the Attorney General the means to prevent abuses which might otherwise take place.

But, by the same token, only the Attorney General best knows how thin the personnel and resources in the Attorney General's office may be stretched. It is inherent in section 11040—particularly with the recent emphasis placed on the importance of providing the Attorney General with the resources needed to "provide competent legal representation of state agencies" (see § 11040, subd. (b))—that he or she can be trusted not to give agencies written permission to employ outside counsel unless there is a real and substantial need for it. That need, we think, is amply demonstrated given the intensive litigation tactics in this case.

## CONCLUSION

The overall theme of Attransco's appeal is that it is a waste of tax dollars for the Department of Fish and Game to hire a private law firm to help it litigate this action. On that point Attransco's position is manifestly unpersuasive. We are not fooled by what is going on in this case. Wearing down the enemy by making it cover many fronts is a classic tactic of warfare (see Sun Tzu, The Art of War (Griffin, trans., Oxford U. Press 1963) p. 98) and it is obvious that the lesson has not been lost on the shipowner. We are fully aware that the present appeal simply represents a new tactical theater of operations designed to inflict collateral damage on an enemy through a

costly diversion.[12] As a policy matter, it is unthinkable that state agencies statutorily charged with recovering costs of cleaning up pollution should be deterred from their purpose because they can be outmanned in a paper war.

The order denying the motion to disqualify is affirmed. Respondents are to recover their costs.

Crosby, J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 19, 1997.

---

[12]While we do not reach the question of whether Attransco's delay in bringing the motion is sufficient by itself to sustain the trial court's order, the delay does furnish an inference that the real reason for the motion was to increase the costs of litigation to the plaintiffs in terms of both time and money. If Attransco really wanted to save the taxpayers money, it might have tried to settle the case by now.