[Nos. D037419, D037873. Fourth Dist., Div. One. July 17, 2002.]

JACQUELYN GILES et al., Plaintiffs and Respondents, v.
BILL HORN, as County Supervisor, etc., et al., Defendants and
Appellants.

**COUNSEL**

John J. Sansone, County Counsel, and Judith A. McDonough, Deputy County Counsel, for Defendants and Appellants.

Chapin Shea McNitt & Carter, Aaron H. Katz and Sarah N. Baker for Maximus, Inc., as Amicus Curiae on behalf of Defendants and Appellants.

Kathleen Bales-Lange, County Counsel (Tulare) and Teresa M. Saucedo, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Appellants.

Tosdal, Levine, Smith & Steiner and Thomas Tosdal for Plaintiff and Respondent Jacquelyn Giles.

Van Bourg, Weinberg, Roger & Rosenfeld and James G. Varga for Plaintiffs and Respondents Ardelia McClure, Amelia Rivera, Sara Sandez, Maria Franco and Mary Harrigan.

**OPINION**

**NARES, Acting P. J.**—These consolidated appeals arise from plaintiffs and respondents Jacquelyn Giles, Ardelia McClure, Amelia Rivera, Mary Harrigan, Maria Franco and Sara Sandez's (collectively plaintiffs) suit against defendants and appellants Bill Horn, Greg Cox, Dianne Jacob, Pam Slater and Ron Roberts, in their collective official capacity as the San Diego County Board of Supervisors, and against the San Diego County Welfare Director and Robert Ross, M.D., in his official capacity as Director of the San Diego County Health and Human Services Agency (collectively defendants), alleging that defendants' hiring of private contractors to provide certain services under San Diego County's implementation of California's welfare-to-work program, known as CalWORKS, violated both the San Diego County Charter (County Charter) and state law. The court agreed, ordering the agreements entered into between San Diego County (the County) and the private contractors terminated because (1) the County did not make a finding that the contractors would provide services more economically and efficiently than county civil service employees as required by the County Charter; and (2) Welfare and Institutions Code[1] section 10619 forbids the County from contracting out to private contractors case management services under the CalWORKS program.

Defendants contend that the court erred in terminating the contracts because the issue of whether a finding of efficiency and economy is required prior to contracting with non-civil-service employees is now moot because the pertinent contracts have been performed and have expired, and the County made efficiency and economy findings before entering into new contracts with the private contractors. Defendants also assert that they were not required to make an economy and efficiency finding here because (1) the County was hiring individuals to perform services not already performed by civil service employees; (2) time was of the essence and independent contractors could provide the services more swiftly; and (3) the County Charter only required economy and efficiency determinations where the services could be performed by existing civil service personnel. Defendants also contend that the County has authority under both state and federal law to contract out welfare services to private contractors.

We conclude that the County was required, pursuant to the County Charter, to make a determination that it was more economical and efficient to contract out case management services under the CalWORKS program to · private contractors than to have those services performed by County civil

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

service personnel prior to entering into such contracts. However, we reverse as moot the court's ruling that the County violated applicable County Charter provisions in failing to make such a determination, as the relevant contracts have been performed and have expired. We therefore order the court to dismiss that claim. Further, we remand the action for a determination of plaintiffs' claim that the County's contracts with private contractors are in fact not more economical and efficient than having those functions performed by civil service personnel. The present contracts expired on June 30, 2002, and the County is in the process of making or has already made an economy and efficiency determination for contracts with private contractors following that date. Therefore, if the County relies upon the determinations made for the expired contracts in finding any new contracts beginning after June 30, 2002, are more economical and efficient, then plaintiffs may challenge those original findings. However, if new findings of economy and efficiency are or have been performed for contracts after June 30, 2002, plaintiffs' challenge in this litigation would have to be as to the new findings as, since the current contracts have expired, any challenge to the original findings will be moot. We also reverse the court's ruling that the contracts violated state and federal law and reverse the court's award of attorney fees to plaintiffs.

FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. *Federal Welfare Reform*

In 1996, the federal government enacted what is known as the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), 42 United States Code section 602 et seq., which authorized funding to states for welfare-to-work programs. PRWORA replaced two federally funded welfare programs, Aid to Families with Dependent Children (AFDC), which provided monetary assistance to eligible families, and Job Opportunity and Basic Skills (JOBS), which provided employment assistance to adults in families that were receiving AFDC benefits. In California, the JOBS program was known as GAIN.

### B. *California's Implementation of PRWORA*

In 1997, the California Legislature implemented PRWORA by amending section 11200 et seq. and replacing California's AFDC and GAIN programs with the California Work Opportunity and Responsibility to Kids Act (CalWORKS). CalWORKS consists of two welfare services: (1) cash aid to

---

[2]The factual background is taken largely from a stipulation of facts entered into between the parties prior to trial. Additional facts are also taken from testimony and exhibits introduced at trial.

parents and children and (2) the welfare-to-work program, which seeks to end families' dependence on welfare.

The CalWORKS program took effect on January 1, 1998. Participants in the welfare-to-work program were to be enrolled beginning in April 1998, with all eligible participants required to be enrolled by December 31 of that year. If a county failed to meet these deadlines, it faced financial penalties and program participants could be penalized because they were to receive only 18 to 24 months of welfare-to-work services regardless of whether such services were available.

Regarding the contracting out of functions under CalWORKS, section 10619 provides: "A public agency shall, in implementing programs affected by the act adding this section to the Welfare and Institutions Code, perform all program functions exclusively through the use of merit civil service employees of the public agency, *except to the extent permitted by provisions of state and federal law governing the affected program that were in effect on August 21, 1996*." (Italics added.)

## C. *The County's Implementation of CalWORKS*

Anticipating California's pending adoption of the CalWORKS program, in June 1997 the County sought community input on "maximizing the County's capacity to serve CalWORKS recipients through a combination of County staff and community based organizations." By December 1997, County staff developed a CalWORKS plan, which divided case management functions for CalWORKS participants into six geographical regions within the County. Further, the County plan provided for contracting out Cal-WORKS case management services in four of the six regions to private contractors: "To maximize competition, privatization and creativity in an incentivised system, the County will procure case management services for four of the six regions with the goal of selecting up to two regional contractors from private for profit agencies and up to two regional contractors from nonprofit agencies. County staff will be responsible for case management in the two remaining regions."

The County contends that it decided to contract out a portion of the case management function of CalWORKS to private contractors because (1) CalWORKS increased both the number of participants and functions of case workers; (2) the County would need to hire up to 320 new caseworkers and acquire additional facilities and equipment; and (3) due to the time limitations of the benefits under the program, the caseloads would decrease significantly after the first two years, leaving a surplus of civil service

workers if the functions were performed by county employees. The County believed that private contractors would be able to hire employees and procure facilities and equipment more quickly than the County, and thus comply with the deadlines of CalWORKS and avoid any delay in implementing CalWORKS services.

In February 1998, the County's chief administrative officer (CAO) sent a letter to the board of supervisors, requesting approval for the issuance of requests for proposals (RFP's). The letter stated the requirements of CalWORKS were expected to increase the number of County welfare recipients who must engage in full-time work activities from approximately 12,000 to 34,000 individuals. The letter also stated that "any selection would depend upon a finding of economy and efficiency per Board Policy A-96." The board of supervisors approved the issuance of the RFP's on the same day. The purchasing and contracting director was authorized to issue the RFP's and "negotiate and award contracts for these services . . . subject to the [CAO] making a determination of economy and efficiency." In March 1998, the County issued an addendum to the RFP's, stating that "[i]n accordance with County of San Diego Charter Section 916, award of contracts shall be subject to the [CAO's] determination regarding economy and efficiency."

County Charter, article IX, section 916 (County Charter section 916), as amended in 1986, and as it reads today, provides: "Section 916: Independent Contractors. Nothing in .this Article [governing civil service employees] prevents the County from employing an independent contractor when the Board or Purchasing Agent determines that *services can be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service.*" (Italics added.)

County Charter, article VII, section 703.10 (County Charter section 703.10) states: "In cases where the County intends to employ an independent contractor, the [CAO] *shall* first determine that the services can be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service." (Italics added.)

County Board of Supervisors Policy No. A-96 (Board Policy A-96) provides for the procedure in making an economy and efficiency determination. However, Board Policy A-96 also provides certain exceptions to the requirements of County Charter sections 703.10 and 916 that an economy and efficiency determination be performed before the County contracts with private contractors: "Service contracts that meet one or more criteria need not be reviewed by the [CAO] for a determination regarding economy and efficiency. The Department's request to contract, however, will include

justification for requesting an exception under the criteria. The justification shall be reviewed for sufficiency by the [CAO] prior to submitting the request to contract to the Board of Supervisors or the Director, Purchasing and Contracting for action. The criteria are: [¶] 1. The service is of a highly specialized or technical nature and is intermittent or irregular. [¶] 2. The service is so urgent, temporary, special and highly technical that the work could not be properly performed by civil service employees. [¶] 3. The work is of a character that it is impossible to have it performed by civil service employees. . . . [¶] 4. The service depends in part on the use of equipment and material not possessed by the County at the time and place required and the cost to the County of procuring such equipment and material would be disproportionate for the result obtained. [¶] 5. The entire service will be funded by a State or Federal funding source that requires the County to contract out for the service. This includes renewals and extensions of such contracts."

In June 1998, the director of the County Health and Human Services Agency wrote the CAO that "County Counsel has analyzed the services to be provided and concluded that these services fall within the parameters of one or more exceptions specified in Board Policy A-96. Therefore, it is not necessary for you to make a determination of economy and efficiency prior to contracts being awarded." In June 1998, the CAO wrote the board of supervisors, stating: "Contract awards were to be subject to a finding by me of economy and efficiency in accordance with Board Policy A-96 . . . . [¶] County Counsel has analyzed the services to be provided and concluded that they fall within one or more of the exceptions specified in Board Policy A-96. Therefore, it is not necessary for me to make a determination of economy and efficiency."

Nowhere in the record is there any indication as to what exception or exceptions under Board Policy A-96 county counsel believed applied to relieve the County from making an economy and efficiency determination before contracting out CalWORKS case management functions to private entities. It also is undisputed that prior to contracts being signed with private contractors to perform case management functions under the CalWORKS project, no economy and efficiency determination was made by the CAO pursuant to County Charter sections 703.10 and 916.

In June and July 1998, the County entered into contracts with three entities, Maximus, Inc., Lockheed-Martin and Catholic Charities, for provision of case management functions in four of six administrative regions in San Diego. The remaining two administrative regions were to be served by civil service employees of the County.

D. *Nature of CalWORKS Functions Administered by Private Contractors*

CalWORKS replaced the GAIN program, where County civil service employees in the health and human services agency provided work services for welfare recipients. However, no civil service employees were terminated or laid off as a result of the private CalWORKS contracts. Rather, persons previously filling the positions for the County under the GAIN program were either employed by the private contractors or transferred to other county positions.

The CalWORKS program also increased the scope of services for the welfare-to-work program from that previously provided by the County under GAIN and mandated several services not previously provided. Case management workers are required to increase their monitoring of participants' attendance in the welfare-to-work program and record that attendance as well. Caseworkers also provide services beyond those previously provided by the County under the GAIN program, including postemployment services.

In providing case management services for welfare-to-work participants under CalWORKS, private contractors are not authorized to make policy or program decisions. County civil service employees make the initial determination of eligibility for applicants for benefits under CalWORKS. The private contractors are not authorized to impose sanctions for violations of CalWORKS rules. Rather, only county civil service employees impose sanctions. Pursuant to the contracts with the private contractors the case management functions are described as: "[T]he coordination of services and activities, beginning with Job Search, and including but not limited to: assessing the participant's employability and need for support services; developing the welfare-to-work plan with the participant; tracking and evaluating the participant's attendance and progress in work activities; identifying and authorizing supportive services; making a determination of cause for failure to participate; referring the participant to community resources for work activities, counseling and assisting in accessing community resources and resolving problems; documenting in the physical and electronic case file, and completing other required documents."

The private contractors conduct the appraisal and assessment of the recipient. The assessment includes the development and execution of the welfare-to-work plan between the County and the welfare recipient.

The private contractors also determine what, if any, supportive services are needed by the CalWORKS participant. Supportive services may include

child care, transportation, and ancillary expenses. Private contractors are required to assess social, economic and employment situations, and must have the ability to apply judgment in determining appropriate activities and services for the participant to become self-sufficient. The private contractors make good cause recommendations, such as whether there is good cause for a participant's failure to comply with the requirements of participation. The private contractors develop compliance plans with individual participants.

The County mandates that the contractors use the CalWORKS program guide developed by the County, which provides uniform instructions to all case managers to ensure consistent application and administration of the CalWORKS program. Under their contracts, the private contractors must comply with the criteria for case management set forth in the program guide.

### E. *Approval of CalWORKS Plan by State*

The County submitted its implementation plan for the CalWORKS program to the California Department of Social Services (DSS) in January 1998. The plan set forth the County's intention to contract with private entities to provide case management services in four of the six administrative regions of the County. In February 1998, the DSS approved the County's plan.

### F. *This Action*

In August 1999, plaintiffs brought this action to enjoin expenditure of public funds to provide CalWORKS case management services through private contractors. The first cause of action sought a declaration that the expenditure of funds was illegal because no economy and efficiency determination was made and because civil service employees could adequately, competently and more efficiently perform the services. The first cause of action further sought a declaration that expenditure of public funds was illegal because "the service cannot be provided more economically and efficiently by the contractors than persons employed in the Classified service." The second cause of action sought a declaration that the County's delegation of certain "discretionary" functions under the CalWORKS program to private contractors was illegal under state and federal law. Plaintiffs thereafter filed an amended complaint that added third and fourth causes of action for writ of mandate to stop the alleged violations of law identified in the first two causes of action.

The action proceeded to a bench trial in June 2000. The court heard testimony, received exhibits and received a lengthy stipulation of facts

entered into between the parties. In July 2000, the court issued a tentative statement of decision, which it subsequently revised.

In its tentative statement of decision, the court considered the County Charter provisions requiring a finding of economy and efficiency before hiring independent contractors. The court first found that Board Policy A-96, purporting to create exceptions to the required economy and efficiency requirements, was an unlawful attempt to modify or amend the County Charter, as such action could only be taken through a vote of the electorate. The court also found that there was no basis in law to create an exception to the required economy and efficiency determination based upon an emergency or specialized task to be performed. The court also found that, assuming Board Policy A-96 was proper, the facts of this case did not meet any of the listed exceptions contained therein. The court also found that there was no exception to County Charter sections 703.10 and 916 based upon the fact that "new services" were being provided. The court further found that the case management functions under CalWORKS were not "new services," but that they only required more tracking and postemployment job retention services than under the GAIN program. The court also noted that while under the common law such an exception might exist for new services if no civil service employees were displaced, civil service employees were displaced because they were moved to other positions within and outside of the County.

The court found that contracting out case management functions to non-civil-service contractors violated the terms of section 10619 because the contracting out of such functions was barred by both California and federal law as it existed in 1996. In making this finding the court relied upon a 1986 DSS letter sent to counties that described what functions could be contracted out under the prior GAIN program. The court also relied upon federal regulations in place in 1996 that described what welfare-to-work program functions could be contracted out.

After receiving objections from counsel, the court confirmed its statement of decision. The court set oral argument for September 2000. Following oral argument the court found the contracts to be "unlawful" and (1) issued a writ of mandate terminating the contracts entered into with the private contractors and (2) permanently enjoined the county from expending further public funds on contracts with private contractors for the provision of case management services under the CalWORKS program. However, the court stayed enforcement of its order and resulting judgment pending the appeal of this matter.

Subsequent to the judgment being entered, plaintiffs brought a motion for attorney fees, arguing that they were entitled to an award of fees pursuant to

Code of Civil Procedure section 1021.5 because the judgment they obtained enforced an important right affecting the public interest, conferred a substantial benefit on the public, and the necessity and financial burden of the litigation made an award of fees appropriate.[3] In March 2001 the court granted plaintiffs' motion, awarding attorney fees in the amount of $104,878.

### G. *Matters Occurring Postjudgment*

Following the court's entry of judgment and the filing of this appeal, defendants filed a motion requesting judicial notice of certain facts with this court. In the motion, the defendants requested that this court take judicial notice of the fact that in December 2000, when the County extended its contracts with Maximus, Lockheed-Martin and Catholic Charities, the CAO for the County made a finding that contracting out the case management functions for the CalWORKS project to those entities was more economical and efficient than to have those services provided by civil service employees. Defendants further sought judicial notice of the fact that in 2001, the San Diego County Taxpayers Association awarded the County's Health and Human Services Agency the Golden Watchdog award for its CalWORKS welfare-to-work program. In support of the request that this court take judicial notice of the December 2000 economy and efficiency determinations, defendants attached the CAO's findings of economy and efficiency as to the extension of the County's contracts with Maximus, Lockheed-Martin and Catholic Charities.

Plaintiffs did not oppose defendants' request for judicial notice. In September 2001, we granted defendants' request for judicial notice.

### DISCUSSION

### I. *Standard of Review*

Because the pertinent facts are not in dispute, and we are applying these facts to statutory and local charter provisions, we review the court's legal findings that the County's contracts with independent contractors to provide

---

[3]Code of Civil Procedure section 1021.5 provides in part that: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

case management functions under the CalWORKS program violated the County Charter and state and federal law under the independent de novo standard of review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) ■ Under this standard, we are not bound by the findings of the trial court and review the facts and law anew. (*Ibid.*)

However, as to any of the court's findings of fact, we apply the substantial evidence standard. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) ■ Under this standard, "[a]ll of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity, to be accepted by the trier of fact." (*Buehler v. Sbardellati* (1995) 34 Cal.App.4th 1527, 1542 [41 Cal.Rptr.2d 104], italics omitted.)

## II. *Principles of Statutory Construction*

The applicable canons of statutory construction that guide our analysis in this matter are well established. ■ "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) In determining that intent, we first examine the words of the statute itself. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) ■ Under the so-called plain meaning rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the language of the statute is clear and unambiguous, there is no need for construction. (*Ibid.*) ■ " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) The legislative purpose will not be sacrificed to a literal construction of any part of the statute. (*Select Base Materials v. Board of Equal., supra*, 51 Cal.2d at p. 645.)

■ Additionally, "[w]hile the ultimate interpretation of a statute is an exercise of the judicial power [citation], when an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous.' " (*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668-669 [150 Cal.Rptr. 250, 586 P.2d 564] (*Judson*

*Steel*), quoting *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].) Courts find administrative interpretations of a law to be "significant factors in ascertaining statutory meaning and purpose. [Citations.]" (*Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743].)

■ The same rules of statutory interpretation that apply to statutory provisions also apply to local charter provisions. (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171-172 [36 Cal.Rptr.2d 521, 885 P.2d 934].)

### III. *Alleged Violation of County Charter Sections 703.10 and 916*

Defendants first contend that the court erred in finding that the County violated the terms of County Charter sections 916 and 703.10 by failing to perform a determination that the contracts it entered into with private contractors for the provision of case management services under the Cal-WORKS program were more economical and efficient than having county civil service personnel perform those same functions. Specifically, defendants assert that they were not required to make an economy and efficiency finding here because (1) the County was hiring individuals to perform services not already performed by civil service employees; (2) time was of the essence and independent contractors could provide the services more swiftly; and (3) the County Charter only required economy and efficiency determinations where the services could be performed by existing civil service personnel.[4]

We conclude that the court did not err in finding that the County violated County Charter sections 916 and 703.10. However, because the contracts sued upon have been fulfilled and have expired, plaintiffs' claim that the County violated County Charter provisions has been rendered moot. Accordingly, we reverse the judgment on plaintiffs' claim alleging a violation of County Charter provisions and order the court, on remand, to dismiss that claim as moot. However, because plaintiffs have also pleaded a claim that the contracting out of case management functions is not in fact more economical and efficient than if those services were performed by civil service personnel, we remand this matter to allow that claim to proceed to a determination, as detailed, *post*.

### A. *Applicable charter provisions*

As detailed above, County Charter section 703.10 provides that "where the County intends to employ an independent contractor, the [CAO] *shall*

---

[4]Defendants do not contend on appeal that the services contracted out under the Cal-WORKS program fell within any of the purported exceptions to County Charter sections 703.10 and 916 listed in Board Policy A-96.

first determine that the services can be provided more economically and efficiently by an independent contractor than by persons employed in the Classified Service." (County Charter, § 703.10, italics added.) However, it is undisputed that the County did not make such a determination before it entered into contracts with the independent contractors to perform case management functions under the CalWORKS program. ■ By the clear and unambiguous language of the applicable charter provisions, unless some exception applies, the County violated County Charter sections 703.10 and 916 when it entered into those contracts by neglecting to first determine that the functions to be performed could be done more economically and efficiently than by civil service personnel. We address in order the County's assertions that exceptions applied to relieve them of that duty.

### B. *Exception for services not previously provided by the County*

Defendants first assert that the County did not need to perform the economy and efficiency determination because the CalWORKS program required the provision of services not previously performed by civil service personnel. In support of this contention they rely primarily upon the decision in *California State Employees' Assn. v. Williams* (1970) 7 Cal.App.3d 390 [86 Cal.Rptr. 305] (*Williams*). In *Williams*, the Court of Appeal noted the long-standing rule that the state civil service system did not prohibit the contracting out of services that cannot be performed " 'adequately or competently or satisfactorily' " by civil service personnel. (*Id.* at p. 396.) The issue there was whether the state could hire an independent contractor to perform administrative tasks for the Medi-Cal program, rather than hire additional civil service employees to perform those tasks. (*Id.* at p. 392.) The court concluded that the state constitutional policy protecting the civil service system only applies to existing civil service personnel, not to a situation where the state is delivering a new service. (*Id.* at p. 397.)

Defendants argue that here, as in *Williams,* the County was not subject to the requirements of hiring civil service personnel because the CalWORKS program required expanded and new services never provided by the County in the past. However, defendants ignore one fundamental difference between the situation presented here and that in *Williams*. The court in *Williams* was not presented with a specific charter provision that *required* certain findings to be made before services were contracted out to private contractors. Local charter provisions supersede conflicting state law as to matters that are within county operation. (*Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1216 [36 Cal.Rptr.2d 55, 884 P.2d 1003] (*Dibb*) ["[P]owers and duties legitimately conferred by charter on county officers *supersede* general law"].) Thus, general state law allowing contracting out of services that

cannot be performed adequately, competently or satisfactorily by civil service personnel cannot supersede the County Charter provisions that require, on their face, an economy and efficiency determination *anytime* the County desires to contract out services that it is charged with providing. If the County wishes to create an exception to this requirement for certain situations, its recourse is to propose a ballot initiative to amend this Charter mandate and create exceptions for certain situations. As County Charter sections 703.10 and 916 presently read, however, economy and efficiency determinations must be made *anytime* the County wishes to employ an independent contractor, as opposed to someone employed within its civil service ranks. There is nothing in their language exempting economy and efficiency determinations where the services are going to be new and different from those previously performed by civil service personnel.

### C. *Exception for situations where time is of the essence*

Defendants next assert that case law provides for an exception to the requirement of hiring civil service personnel where time is of the essence and independent contractors can provide the services more swiftly. (See *Darley v. Ward* (1982) 136 Cal.App.3d 614, 629 [186 Cal.Rptr. 434] (*Darley*); *People ex rel. Dept. of Fish & Game v. Attransco, Inc.* (1996) 50 Cal.App.4th 1926, 1936 [58 Cal.Rptr.2d 661] (*Attransco*).) However, as with the previous contention, defendants ignore the fact that the County Charter economy and efficiency provisions supersede more general state law that allows exceptions to general civil service hiring requirements. (*Dibb, supra,* 8 Cal.4th at p. 1216.) There is nothing in the County Charter that provides for an exception to the economy and efficiency determination where the services need to be provided on a short-term basis.

Moreover, the *Darley* and *Attransco* decisions cited by defendants have no application here. In *Darley,* the county had a charter provision that specifically allowed for the contracting out of "special services." (*Darley, supra,* 136 Cal.App.3d at p. 629.) The court found that the ability to perform the task more swiftly made it a special service within the charter. (*Ibid.*) Here, by contrast, the County Charter does not exempt from economy and efficiency determinations those services that could be performed more swiftly by independent contractors.

Similarly, in *Attransco,* the particular service to be provided, the hiring of a private attorney to represent the Department of Fish and Game, was allowed under a state statute that permitted such contracting out where the " 'services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate

their very purpose.' " (*Attransco, supra,* 50 Cal.App.4th at p. 1936, quoting Gov. Code, § 19130, subd. (b)(10).) Here, however, County Charter provisions do not provide for an exception to the economy and efficiency determination where "time is of the essence."

D. *Language and statutory history of the County Charter sections*

Finally, defendants contend that the language of County Charter section 916 and a review of its history demonstrate that it was never intended to apply to situations where the services require hiring personnel in addition to those already employed in the civil service system. Specifically, defendants point to the fact that in 1967 County Charter section 78.1 (the predecessor to County Charter § 916) was amended to delete a reference to a required economy and efficiency determination for situations where the person was "to be employed" in the civil service system. Former County Charter section 78.1, as it read before the 1967 amendment, provided that: "Nothing in this Article shall prevent the County or any officer, board, commission or agency of the County from employing an independent contractor to provide services of a professional, scientific or technical nature where the Civil Service Commission has determined that it is impractical to have such service furnished by a person employed *or to be employed* in the classified service and the employment of such independent contractor will not require the removal, suspension, layoff or transfer of any employee in the classified service." (Sen. Conc. Res. No. 1, Stats. 1959 (1959 Reg. Sess.) res. ch. 15, pp. 5377-5378, italics added.)

In 1967, the voters approved an amendment to County Charter section 78.1 that, among other things, eliminated the phrase "or to be employed" from its language: "Nothing in this Article shall prevent the County or any officer, board, commission or agency of the County from employing an independent contractor to provide services ~~of a professional, scientific or technical nature~~ to the County where the Civil Service Commission has determined that it is impractical to have such services furnished by a person or persons employed ~~or to be employed~~ in the classified service and the employment of such independent contractor will not require the removal, suspension, layoff or transfer of any employee in the classified service." (Sen. Conc. Res. No. 3, Stats. 1967 (1967 Reg. Sess.) res. ch. 8, p. 4348.)[5]

The current version of County Charter section 916 (and County Charter § 703.10) provides that the County may employ an independent contractor

---

[5]The strikethrough portions represent deletions and the underlined portions represent additions.

where it is determined that "services can be provided more economically and efficiently by an independent contractor than *by persons employed in* the Classified Service." (Italics added.) Defendants assert that the deletion of the words "or to be employed" means that the County need not perform an economy and efficiency determination where the services could not be provided by persons already employed in the County's civil service system. This contention is unavailing.

First, the language of County charter sections 916 and 703.10 does not provide that these sections are inapplicable to situations where the County would need to hire additional civil service personnel to perform the particular function. If the authors of the County Charter had intended such a result, they would have plainly so stated. Rather, a plain reading of County Charter sections 916 and 703.10 reveals that they are intended to apply any time the County is considering hiring an independent contractor, not merely on those occasions where sufficient County employees are already in place to perform the desired function. These sections do not state that they limit the economy and efficiency determination where the services would be performed by individuals "*already* employed in the Classified Service." Rather, a plain reading of the charter provisions indicates that the phrase "employed in the Classified Service" merely refers to the class of individuals as to whom the County must determine whether it is economical and efficient to assign certain functions.

Further, contrary to defendants' assertion, there is nothing in the legislative history of County Charter section 916 that supports their interpretation. Although defendants point to various amendments to County Charter section 916 over the years, they do not rely upon any legislative history for the particular 1967 amendment that deleted the phrase "or to be employed." That legislative history provides no support for defendants' contention.

The ballot pamphlet for the 1967 amendment focused upon the deletion of the requirement that only "professional, scientific or technical" services could be contracted out. (San Diego County Ballot Pamp., Gen. Elec. (Nov. 8, 1966) analysis of Prop. A, p. 2.)[6] The only reference to the deletion of the words "or to be employed" and the other minor changes in the 1967 amendment is the phrase: "Minor changes for clarity are also proposed in other parts of Section 78.1." (*Ibid.*) Thus, the amendment deleting the phrase "or to be employed" was only to make the text more clear, not to substantially limit the reach of this County Charter provision. It is extremely

---

[6]We may properly take judicial notice of the statutory history of County Charter section 916 and its predecessor, section 78.1. (See *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

unlikely that such as a major limitation on the required economy and efficiency finding would be added by use of such a phrase and without any discussion in the ballot pamphlet.

Defendants also assert that other amendments to County Charter section 916 evidence a broadening of the ability to contract out for services that supports their interpretation of County Charter sections 916 and 703.10. It is true that the circumstances under which the County may contract out for services has been broadened over the years through amendments to County Charter section 916. As mentioned, *ante*, in the 1967 amendment, the limitation on contracting out for services only for "professional, scientific or technical" positions was eliminated. Further, in 1969, former County Charter section 78.1's requirement that it be "impractical" to have civil service personnel perform the required tasks was deleted and replaced with the present language requiring that an assessment of economy and efficiency be performed. (Sen. Conc. Res. No. 6, Stats. 1969 (1969 Reg. Sess.) res. ch. 14, pp. 3514-3515.) Further, that amendment eliminated the restriction preventing hiring of independent contractors if it would cause the transfer of an existing civil service employee. (*Ibid.*) In 1976 former County Charter section 78.1 was again amended, removing the requirement that contracting out services would not cause the "removal, suspension, or layoff" of civil service personnel. (County Charter, § 78.1 (Dec. 1, 1976).) In 1986, after section 78.1 was renumbered section 916, this charter provision was amended again to eliminate the civil service commission's role in making the economy and efficiency determination. Under that amendment, it is now the CAO's responsibility to perform that assessment. (County Charter, § 916.)

However, although the situations in which the County could contract out services were expanded, none of the foregoing amendments expressly or impliedly evidenced an intent that the economy and efficiency determination should only be performed where the functions could all be performed by existing civil service personnel. In sum, the language of County Charter sections 703.10 and 916 and the legislative history of County Charter section 916 do not support the County's claim that it was only required to make a finding of economy and efficiency where the tasks could be completely performed by existing civil service personnel. We thus conclude the court did not err in finding that the County violated the terms of County Charter sections 703.10 and 916 when it originally contracted out case management services for the CalWORKS project.

IV. *Mootness of Charter Violation Claim*

"It is well settled that an appellate court will decide only actual controversies. Consistent therewith, it has been said that an action which

originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised therein have become moot by subsequent acts or events. . . . [T]he appellate court cannot render opinions ' ". . . upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal." ' [Citations.]" (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581] (*Finnie*).) As the Court of Appeal stated in *Wilson v. L. A. County Civil Service Com.* (1952) 112 Cal.App.2d 450, 453 [246 P.2d 688], " 'although a case may originally present an existing controversy, if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character, it becomes a moot case or question which will not be considered by the court.' "

This rule has been regularly employed where injunctive relief is sought and, pending appeal, the act sought to be enjoined has been performed. For example, in *Finnie, supra,* 199 Cal.App.3d at page 7, the plaintiff brought an action seeking an injunction preventing a special election from occurring. The trial court denied the plaintiff's application, and the plaintiff appealed. (*Id.* at p. 9.) However, during the pendency of the plaintiff's appeal, the election took place. The Court of Appeal held the plaintiff's action was moot and dismissed the appeal. (*Id.* at pp. 10-11.)

Similarly, in *Jennings v. Strathmore Public etc. Dist.* (1951) 102 Cal.App.2d 548 [227 P.2d 838], the plaintiff sought to enjoin and declare invalid a public utility district contract after the contract had been let and work was well under way. After the trial court dismissed the action as moot (and based upon the plaintiff's lack of standing), the plaintiff appealed. By the time the appeal was heard, the work was fully completed. The Court of Appeal again dismissed the case as moot. (*Id.* at p. 549.)

In *Childress v. L. Dinkelspiel Co., Inc.* (1928) 203 Cal. 262, 263 [263 P. 801], the plaintiff obtained an order enjoining a special meeting to elect an additional corporate director. The appeal was dismissed as moot by virtue of the fact that a subsequent annual board meeting had by then been held, and an entirely new board elected. In *Hidden Harbor v. Amer. Fed. of Musicians* (1955) 134 Cal.App.2d 399, 402 [285 P.2d 691], an appeal from a preliminary injunction against interference with the plaintiff's employment contract was declared moot where the employment agreement was fully performed and had expired.

■ Here it is undisputed that the original contracts, which were the subject of plaintiffs' claim that they violated the County Charter provisions requiring findings of economy and efficiency, have been fully performed and expired in 1999. The County was given the option to extend the contracts each year for three years thereafter. Before the County exercised its option to extend the contracts in 2001, the CAO made findings that the CalWORKS case management functions could be performed more economically and efficiently by Maximus, Lockheed-Martin and Catholic Charities than by civil service workers.

Thus, plaintiffs' claims seeking a writ of mandate and injunction to set aside the contracts and enjoin expenditure of public funds under the contracts are moot to the extent they are based upon a failure by the County to make a finding of economy and efficiency before entering into the original contracts. The contracts have been fully performed and have expired. Plaintiffs' claim that defendants violated the County Charter provisions requiring a finding of economy and efficiency before contracting with non-civil-service contractors has lost its essential character and therefore we cannot consider it upon this appeal. (*Wilson v. L. A. County Civil Service Com.*, *supra*, 112 Cal.App.2d at p. 453.)

Plaintiffs attack defendants' request for judicial notice on the basis that the fact of which judicial notice is requested "is subject to dispute and not capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." However, plaintiffs have waived any such challenge by failing to oppose defendants' request for judicial notice. (Cal. Rules of Court, rule 41(c); *Sharp v. Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 361 [9 Cal.Rptr.2d 925].) Moreover, based upon the documents provided to this court, it cannot be disputed that in fact the County CAO *did* make a finding of economy and efficiency as to the CalWORKS contracts in December 2000.

Plaintiffs assert that even if the issue concerning violation of the County Charter has been rendered moot, the court should nevertheless exercise its discretion to review the matter on the merits because it poses an issue of broad public interest that is likely to recur. (See *In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737].) This argument is unavailing. Plaintiffs' claim concerns whether, on the facts peculiar to the particular contracts at issue here, and the services to be performed, the County was required to make a finding of economy and efficiency. Because plaintiffs' claim is a particularly factual determination that must be resolved on a case-by-case basis, dependent upon the specific facts of a given situation, it is not one on which we would exercise our discretion to address on the merits, despite the fact that it is moot.

Plaintiffs also argue that the County is merely attempting to avoid the court's order by belatedly conducting an economy and efficiency determination in order to render the decision moot and that it will be encouraged to take the same tack in the future as to other challenges. This argument is also unavailing. First, the County is not *avoiding* the court's order, but *complying* with it. Based upon the court's determination, the County could not have renewed the subject contracts without first conducting an economy and efficiency determination. Cases are often found moot when a party has complied with a court's order before an appeal has been decided. (See *Callie v. Board of Supervisors* (1969) 1 Cal.App.3d 13, 18-19 [81 Cal.Rptr. 440] [appeals moot because county amended ordinances invalidated by the court].) Further, as discussed, *ante,* there is no danger of the County only making such a determination after the fact as this case revolves around facts peculiar to the contracts at issue here. Further, as we discuss, *post*, whether the contracts are in fact more economical and efficient is a subject that is still open to challenge.

"'Where an appeal is disposed of upon the ground of mootness and without reaching the merits, in order to avoid ambiguity, the preferable procedure is to reverse the judgment with directions to the trial court to dismiss the action for having become moot prior to its final determination on appeal. [Citations.]' [Citations.]" (*County of San Diego v. Brown* (1993) 19 Cal.App.4th 1054, 1090 [23 Cal.Rptr.2d 819].) Therefore, we reverse that portion of the judgment that is based upon the County's failure to make a finding of economy and efficiency and direct the court to dismiss that portion of plaintiffs' claim as moot.

### V. *Plaintiffs' Claim That Contracts Are Not in Fact More Economical and Efficient*

In addition to alleging that the County failed to make an economy and efficiency determination prior to contracting out CalWORKS case management functions, plaintiffs' complaint also alleges that the contracts were improper because the contracted-out services "cannot be provided more economically and efficiently by the contractors than persons employed in the Classified Service." However, the court never resolved this claim, perhaps because it may not have been ripe for adjudication at the time this matter originally went to trial and because the court determined that the CalWORKS case management functions could not ever be contracted out under state and federal law. Although the court's order is unclear, a fair reading of its text indicates that the court's determination that the contracts were unlawful, and the grant of a writ of mandate and permanent injunction prohibiting expenditures of public funds under the contracts between the

County and private contractors, was based upon the court's finding that such functions could not be contracted out under state and federal law. A violation of the County Charter would only require an order that the County comply with its provisions and/or enjoining expenditure of public funds until such action was taken.

Now that the County has made a finding, obviously in response to the court's ruling, that contracting out case management functions is more economical and efficient than having those services performed by civil service employees, plaintiffs' claim that the contracts are in fact *not* more economical and efficient is now ripe for adjudication. While such a claim could also be brought in a separate action, because plaintiffs have asserted it in this matter, and in the interests of judicial economy and to give both sides some finality to this matter, we order this action remanded for a determination of plaintiffs' claim that the contracting out of case management functions under the CalWORKS program is not more economical and efficient than having those services performed by civil service personnel.[7] (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 570 [7 Cal.Rptr.2d 531, 828 P.2d 672] [case remanded with directions to allow further proceedings on issue not resolved by trial court].)

In a letter brief submitted by the County in response to our request, it has indicated that the current contracts between the County and contractors for which it made economy and efficiency determinations expired June 30, 2002. The County asserts that it is in the process of conducting economy and efficiency determinations, or has already done so, for new contracts set to begin July 1, 2002. If the County relies upon the determinations made for the expired contracts in finding any new contracts beginning after June 30, 2002, are more economical and efficient, then plaintiffs may challenge those original findings. However, if new findings of economy and efficiency are performed for contracts set to start after June 30, 2002, plaintiffs' challenge in this litigation would have to be as to the new findings as once the current contracts expired any challenge to the original findings would be moot.

## VI. *Alleged Violation of Section 10619*

Defendants assert that the court erred in finding that they were in violation of section 10619 because state and federal law in place in 1996 did allow counties to contract out case management functions for CalWORKS programs. We agree and reverse that portion of the judgment based upon the County's alleged violation of section 10619.

---

[7]We take no position on the merits, procedurally or substantively, of such a claim.

A. *Section 10619 and other relevant statutes*

Government Code section 26227 gives counties general statutory authority to appropriate and expend funds on welfare programs and authorizes counties to "contract with . . . private agencies or individuals to operate those programs . . . ."

Further California's statutory scheme for the CalWORKS program directs counties to use all available resources, both public and private, to provide welfare-to-work services: "It is the intent of the Legislature that, in developing the plan required by this chapter, counties shall make an effort not to duplicate planning processes that have already occurred within the county, but rather to build upon, and incorporate where appropriate, existing local plans that provide for a collaborative approach to employment services, economic development, and family and children's services." (§ 10530.)

The Legislature clearly envisioned that counties, in adopting plans to provide CalWORKS services, would be contracting out some of those services to private entities:

"Each county shall develop a plan consistent with state law that describes how the county intends to deliver the full range of activities and services necessary to move CalWORKS recipients from welfare to work. The plan shall be updated as needed. The plan shall describe:

"(a) How the county will collaborate with other public and private agencies to provide for all necessary training, and support services." (§ 10531.)

However, section 10619 specifically limits the contracting out of functions under the CalWORKS program as follows: "A public agency shall, in implementing programs affected by the act adding this section to the Welfare and Institutions Code, perform program functions exclusively through the use of merit civil service employees of the public agency, except to the extent permitted by provisions of state and federal law governing the affected program that were in effect on August 21, 1996."

The question presented here is whether the County violated state or federal law as it existed in 1996 when it contracted out case management services under the CalWORKS program. After reviewing applicable authority and persuasive direction from the DSS, we conclude that the County did not violate either state or federal law by contracting out these functions to private entities.

B. *State Law*

1. *Legislative history of CalWORKS*

 The legislative history of the state CalWORKS program provides support for the defendants' contention that the nature of services contracted out under the County's CalWORKS program complied with state law as it existed in 1996. The Concurrence in Senate Amendments for Assembly Bill No. 1542, the bill for the state CalWORKS program, provides as follows regarding contracting out functions: "CONTRACTING OUT AND CIVIL SERVICE: Retains existing law and specifies that the counties *shall remain responsible for performing program functions (e.g. eligibility functions)* through merit civil service employees, and may contract out other services only to the extent allowed under state and federal law as of August 21, 1996." (Legis. Counsel's Dig., Sen. Conc. Amends. to Assem. Bill No. 1542 (1997-1998 Reg. Sess.), italics added.)

In a report on Assembly Bill No. 1542 prepared by the DSS, the DSS describes the functions that may not be contracted out under CalWORKS: "Requires program functions to be performed exclusively by merit civil service employees of the public agency, except as permitted by state and federal law governing the program on 8/21/96. This allows only limited functions to be contracted out. *Discretionary activities, e.g., those relating to determining eligibility or imposing sanctions, cannot be contracted out.*" (Cal. Dept. of Social Services, Major Items of Welfare Reform Contained in Assem. Bill No. 1542 (1997-1998 Reg. Sess.) Aug. 14, 1997, p. 21, col. 3, italics added.)

Thus, the legislative history of CalWORKS envisions that "discretionary" functions such as eligibility and imposition of sanctions cannot be contracted out. The parties stipulated that the County did not contract out eligibility determinations and imposition of sanctions to private contractors. County civil service personnel perform these functions. Further, as we discuss in more detail, *post,* the term "discretionary functions" in the context of contracting out welfare services refers to policy level and administrative functions and ultimate decisions that affect a party's right to aid or to participate in the CalWORKS program, none of which are performed by the private case management workers with whom the County contracted.

2. *The DSS's determination the County was in compliance with applicable law*

Pursuant to the CalWORKS legislation, the DSS was directed to determine whether a county's proposed plan to implement that program complied

with state and federal law: "The [DSS] and the counties shall implement the provisions of the CalWORKS program in the following manner: [¶] . . . [¶] (b)(2) Within 30 days of receipt of a county plan, the [DSS] shall either certify that the plan includes the description of the elements required by Section 10531 and that the descriptions *are consistent with the requirements of state law and, to the extent applicable, federal law* or notify the county that the plan is not complete or consistent stating the reasons therefor." (§ 10532, subd. (b)(2), italics added.)

As discussed, *ante,* the County submitted its proposed plan to implement the CalWORKS project to the DSS in January 1998. In that plan, the County detailed the fact that it was planning to contract out case management functions to private contractors: "[T]he County will procure case management services for four of the six regions with the goal of selecting up to two regional contractors from private for profit agencies and up to two regional contractors from nonprofit agencies. County staff will be responsible for case management in the two remaining regions."

In February 1998, the DSS approved the County's plan, certifying that it met the requirements of section 10531. As the DSS is charged with determining that a county's proposed plan to implement the CalWORKS is consistent with state and federal law under section 10532, its approval of the County's plan is persuasive evidence that it was not in violation of section 10619. (*Judson Steel, supra,* 22 Cal.3d at pp. 668-669.)

Plaintiffs assert that the DSS did not approve the County's contracting out case management functions, arguing that the plan was submitted in January 1997, but the RFP's for contracting out case management functions and describing the scope of services to be contracted out was not submitted to the board of supervisors until February 1997. However, plaintiffs have their dates wrong. The County submitted its proposed plan to the DSS in January *1998.* Moreover, plaintiffs do not explain why the date the plan was submitted to the state versus the date the RFP's were submitted to the board of supervisors is relevant to this appeal.

Plaintiffs also argue that the DSS's certification "only concerns the scope of activities and services to recipients, not the manner of performing case management," citing section 10531. However, the certification by the DSS, as discussed, is governed not by section 10531, but by section 10532, which requires the DSS to determine that the County's plan complied with state and federal law.

As the following discussion will show, the DSS's approval of the County contracting out case management functions under the CalWORKS program

was not clearly erroneous, and therefore it is entitled to great weight. (*Judson Steel, supra,* 22 Cal.3d at pp. 668-669.)

3. *The DSS's 1997 All County Letter*

Section 10532, subdivision (a) provides that the DSS "shall issue a planning allocation letter and county plan instructions to the counties within 30 days of the enactment of the CalWORKS program." The historical and statutory notes for the CalWORKS legislation (contained in the historical and statutory notes for Ed. Code, § 8208) provide that the DSS " 'may implement the applicable provisions of this act through all county letter or similar instructions from the director.' " (Historical and Statutory Notes, 26 West's Ann. Ed. Code (2002 supp.) foll. § 8208, p. 99.)

In August 1997, the DSS issued a report summarizing the major changes between GAIN and CalWORKS. In that report, the DSS explained as to contracting out services that "[f]ederal and state law on 8/21/96 prohibited the contracting out of discretionary functions, e.g., those related to determining eligibility or imposing sanctions."

In October 1997, the DSS issued an All County Letter (the 1997 All County Letter), providing guidelines or implementation instructions to counties for the CalWORKS welfare-to-work program. With regard to employing civil service or contracting out to private entities, the DSS states that "[a] public agency shall, in implementing programs affected by the act adding this section to the Welfare and Institutions Code, perform *discretionary* program functions exclusively through the use of merit civil service employees of the public agency." (Italics added.)

Thus, the DSS takes the position that as of 1996, both state and federal law prohibited the contracting out of "discretionary" functions in implementing the CalWORKS welfare-to-work program. Further, the DSS identifies "discretionary" functions as such things as "determining eligibility or imposing sanctions." This determination, as well as the DSS's approval of the County's plan and its report discussing the functions that could not be contracted out under CalWORKS, is entitled to great weight. (*Judson Steel, supra,* 22 Cal.3d at pp. 668-669.) Again, the parties stipulated prior to trial that the County has not contracted out these services. They are performed by civil service employees.

Plaintiffs completely ignore the 1997 All County letter and the DSS's August 1997 report. Plaintiffs argue, as the trial court found, that a 1986 DSS All County Letter is applicable and dictates that the County could not

contract out case management functions under CalWORKS. That 1986 All County Letter provided guidelines for contracting out functions under the prior GAIN program. It provides that "counties may not contract out for the execution of the participant contract, the determination of eligibility, or actions related to the granting, termination, or modification of aid payments. Specific examples of activities that the county may not contract out include registration, determining deferral status, appraisal (except for the remedial education screening test), cause determinations, conciliation, and imposing money management or sanctions."

However, there is no evidence that this letter issued 10 years prior to the enactment of CalWORKS, and applicable to the GAIN program, reflected the DSS's position on the law for contracting out welfare functions in 1996. Moreover, the functions identified in the 1986 All County Letter either do not exist under CalWORKS or are performed by civil service personnel. There is no "participant contract" under CalWORKS. A county eligibility technician (ET), a civil service employee, determines eligibility. There are no deferrals under the CalWORKS program. "Registration" of beneficiaries is performed by ET's.

While there is an "appraisal" process under CalWORKS performed by the private contractor employees, it consists of functions akin to a "remedial screening test," which could be contracted out according to the 1986 All County Letter. In the appraisal process, the case management worker assesses the beneficiary's education, work history, and supportive service needs. The case management worker assists the beneficiary in completing forms, and reviews and approves self-initiated training and education programs.

Further, when a beneficiary fails to participate in the program without good cause, a case management worker can recommend a sanction to county personnel. However, private case management workers are *not* authorized to make the determination to sanction a beneficiary. Only county civil service employees may impose sanctions on a beneficiary. Thus, even if the 1986 All County letter reflected the status of the law on contracting out welfare services as of 1996, the County's CalWORKS project was in compliance with that law.

4. *Case law demonstrates the County was in compliance with state law*

In *Ramos v. County of Madera* (1971) 4 Cal.3d 685 [94 Cal.Rptr. 421, 484 P.2d 93] (*Ramos*), the California Supreme Court was presented with the

issue of what functions performed by county employees were "discretionary" in order to determine if the public entity immunity for discretionary decisions applied to their determinations related to the plaintiffs' eligibility under the prior GAIN program. (*Id.* at p. 692.) The high court held that the county defendant was not immune from liability because it and its employees did not exercise "discretion" when making determinations regarding eligibility for welfare benefits. (*Id.* at p. 694.) Because the Legislature had provided standards of eligibility under GAIN, county employees' exercise of judgment in determining if a recipient met those requirements did not constitute an exercise of discretion. (*Ibid.*) The court determined that it is only actual policy level determinations that amount to an exercise of discretion. (*Id.* at pp. 693-695.) Policy decisions are those such as " 'planning' as opposed to the 'operational' level of decisionmaking." (*Id.* at p. 693.) The county's actions in making eligibility determinations under the guidelines provided by the Legislature amounted to only ministerial acts that were not immune from liability. (*Id.* at p. 695.)

Likewise in our case, the private case management contractors are operating under strict guidelines set forth in the CalWORKS program guide. As discussed, *ante,* policy level decisions such as eligibility and sanctions are made by county employees. The private contractors' case management functions, therefore, even though they may involve some judgment, are considered ministerial, not discretionary.

Plaintiffs attempt to distinguish *Ramos* on the ground that it involved the issue of governmental tort immunity, not what functions might be contracted out to non-civil-service employees under welfare programs such as the CalWORKS program. However, plaintiffs do not attempt to explain why these different legal settings should cause us to ignore the *Ramos* court's holding. *Ramos* is persuasive because the legislative history of the CalWORKS legislation and the 1997 All County Letter both indicate that the Legislature intended that counties could contract out any functions that were not "discretionary." These items also demonstrate that the Legislature intended the term "discretionary" to have the same meaning as applied in the *Ramos* case, i.e., policy and administrative level decisions such as those that effect determinations as to eligibility and loss of benefits. *Ramos* provides additional support for the conclusion that state law in effect in 1996 did not prohibit counties from contracting out nondiscretionary, ministerial functions, even if they involved the exercise of some judgment. In sum, the County did not violate California law when it contracted out case management functions to private entities under the CalWORKS program.

C. *Federal Law*

Former 42 United States Code section 685, repealed with the enactment of the PRWORA in 1996, provided for contracting out of welfare services

through private organizations as follows: "The State agency that administers or supervises the administration of the State's plan approved under section 602 of this title shall carry out the programs under this part directly or through arrangements or under contracts with administrative entities . . . . , with State and local educational agencies, and with other public agencies or *private organizations* . . . ." (42 U.S.C. § 685(a), italics added.)

The scope of services that could be contracted out to private entities under PRWORA's JOBS program was further refined by federal regulations. Former Social Security Regulations, Aid to Families with Dependent Children, 45 Code of Federal Regulations part 250.10 provided:

"(a) The State agency responsible for the administration or supervision of the State's title IV-A plan is responsible for the *administration* or *supervision* of the JOBS program.

"(b) *Except as provided in paragraph (c)(2), JOBS activities which involve decision-making with regard to individual participants may be performed by an entity other than the State IV-A agency* according to the policies, rules, and regulations of the State IV-A agency. In doing so, such entity must not have the authority to review, change, or disapprove any administrative decision of the State IV-A agency, or otherwise substitute its judgment for that of the State IV-A agency as to the application of policies, rules, and regulations promulgated by the State IV-A agency.

"(c) *JOBS activities may be delegated or contracted with the exception of the following*:

"*(1) Overall program administration, including:*

"*(i) Establishment of optional provisions and components of the program;*

"*(ii) Responsibility for program planning, design of program, and determining who should participate;*

"*(iii) Establishment of program participation requirements;*

"*(iv) Development of a definition of good cause for failing to participate; and*

"*(v) The issuance of other policies, rules, and regulations governing the program.*

"*(2) Actions involving individuals, including:*

*"(i) Determination of exemption status;*

*"(ii) Determination of good cause for failure or refusal to participate;*

*"(iii) Determination and application of sanctions;*

*"(iv) Providing notice of case actions; and*

*"(v) Fair hearings."* (Italics added.)

The legislative history of the former 45 Code of Federal Regulations part 250.10, found in the Rules and Regulations for the Department of Health and Human Services, Family Support Administration (54 Fed.Reg. 42146 (Oct. 13, 1989)), also discusses what functions could be contracted out under the JOBS program. That regulation provides in part that "[l]ongstanding Federal policy [has interpreted the welfare statutes] to mean that the State IV-A agency must maintain overall responsibility for the design and operation of the program and may not delegate to other than its own officials *functions involving discretion in the overall administration or supervision of the program* [citation]. [¶] However, . . . . *certain JOBS functions and activities which involve decision-making with regard to individual participants may be performed by entities other than the State IV-A agency, so long as there are specific rules and regulations issued by the State IV-A agency governing their implementation.*" (54 Fed.Reg. 42146, 42154, italics added.) This rule also provides later that, "We believe that the State IV-A agency should have maximum flexibility to administer its programs within the requirements of the Act. . . . [¶] It is also clear that Congress intended to expand the variety of services available to assist families in achieving self-sufficiency. Many of these services involve decision-making. . . . [D]elivery of these services must be directed by the IV-A agency, both at the State and local level. However, . . . *we believe that States may generally contract out such functions if they wish.* [¶] Therefore, certain JOBS functions and activities which involve decision-making with regard to individual participants may be performed by entities other than the IV-A agency, but only according to policies, rules and regulations of the State IV-A agency. In doing so, such entities must not have the authority to review, change, or otherwise substitute their judgment for that of the IV-A agency. [¶] Accordingly, *if the State IV-A agency develops specific criteria under which the decision-making regarding a participant is carried out by the contractor, then such functions can be performed by the contractor.* Such activities might include assessment, priority determinations, provision of component services, *case management, and conciliation.*" (54 Fed.Reg. 42146, 42154-42155, italics added.)

Thus, the former 45 Code of Federal Regulations part 250.10 and 54 Federal Register 42146 made clear that case management functions could be ·

contracted out under federal law as it existed in 1996 so long as (1) criteria are provided to the contractors for any decisionmaking functions; (2) the decisionmaking function does not involve certain enumerated actions involving participants; and (3) the contractor is not allowed to make discretionary decisions involving policy level determinations and overall program administration. ■■■ A review of the case management functions contracted out to private contractors under the County's CalWORKS program demonstrates that they meet these federal guidelines.

First, the County did not contract out policy level determinations or overall program administration. Further, the County did not contract out those actions involving individuals barred by former 45 Code of Federal Regulations part 250.10(c)(2)(i)-(v). County employees determine eligibility and therefore "exempt status." Further, while contractors may make recommendations to county staff regarding determinations of "no good cause" for a failure to participate in the CalWORKS program, the actual determination is made by county staff. Further, the contractors' decisionmaking in recommending a course of action on a "no good cause" determination is governed by specific criteria in the CalWORKS Program Guide.

Similarly, while contractors may make recommendations regarding sanctions, they are also based upon criteria set forth in the CalWORKS Program Guide and only county staff may determine whether to impose sanctions. County employees provide notice of all case actions relating to termination or modification of benefits. County employees represent the County at hearings and a state administrative law judge acts as the decision maker.

Plaintiffs contend that the contracted-out functions under the CalWORKS program violated federal law in place in 1996 because they call for the exercise of "administrative discretion," in violation of 45 Code of Federal Regulations part 205.100 (2001).[8] This argument is unavailing.

Title 45 Code of Federal Regulations part 205.100(a)(1)(i) and (b) (2001) provides in pertinent part:

"(a)(1) State plan requirements. A State plan for financial assistance under title I, IV-A, X, XIV, or XVI (AABD) of the Social Security Act must:

"(i) Provide for the establishment or designation of a single State agency with authority to administer or supervise the administration of the plan. [¶] . . . [¶]

---

[8] Respondents mistakenly refer to the regulation as 42 Code of Federal Regulations 205.100 (2001) throughout their brief.

"(b) Conditions for implementing the requirements of paragraph (a) of this section. (1) The State agency will not delegate to other than its own officials its authority for exercising *administrative discretion in the administration or supervision of the plan including the issuance of policies, rules, and regulations on program matters*." (Italics added.)

Under the clear language of this regulation, the only "administrative discretion" that cannot be contracted out is that involving administration or supervision of the plan, such as "issuance of policies, rules, and regulations on program matters." (45 C.F.R. § 205.100(b) (2001).) It is undisputed that these functions have not been contracted out. Contrary to Plaintiffs' argument, it is not all discretionary functions that cannot be contracted out, but only a very limited species. Plaintiffs also ignore the legislative history for this rule, contained in 54 Federal Register 42146. Discussing 45 Code of Federal Regulations part 205.100 (2001), it states:

"A principal purpose of the single State agency provision is to assure that there is a central point of responsibility in the State . . . with adequate legal authority, to which the Federal Government can look for the carrying out the approved State plan and with which it can deal in all matters related to the grants, and that the State functions not be so fragmented as to preclude effective administration. The single State agency principle does not preclude the purchase of services from other State agencies, nor is it designed to set aside the cooperative relationships that are normal and proper within a State. Purchase of services and working cooperatively with other agencies are, however, different from delegating administrative responsibility for performance of functions required under State and Federal laws to other agencies or individuals. The State may make use of the expertise of other agencies as long as the State IV-A agency does not delegate administrative decision-making authority. [¶] . . . [¶]

". . . The State IV-A agency must submit the State JOBS and Supportive Services plan to the Department for approval. It must have sole responsibility for promulgating rules, regulations, and guidelines that govern the operation of the program. It must be responsible for program design decisions, including, but not limited to: (1) optional provisions, such as lowering the age of the youngest child that qualifies an individual for an exemption; (2) what optional components will be offered; (3) definition of failure to participate and good cause for failure to participate; and (4) the minimum requirements for conciliation." (54 Fed.Reg. 42146, 42155.)

Thus, 54 Federal Register 42146 also confirms that the only functions that cannot be contracted out are management-level administrative and policy

decisionmaking, not the type of case management functions contracted out under the County's CalWORKS program.

Plaintiffs argue that 54 Federal Register 42146's discussion of case management activities demonstrates that it was not envisioned that such individuals would have as broad a role as the case management functions contracted out under the County's CalWORKS program. Actually, 54 Federal Register 42146 provides just the opposite, leaving it to the states and local agencies to determine the scope of case management functions: "Under the final regulations, a State IV-A agency that chooses to establish a case management system is given flexibility to design its case management services and procedures." (54 Fed.Reg. 42146, 42179.) "[W]e decline to mandate that specific features of case management be adopted or that case managers be required to receive specified training. We leave these matters to the discretion of the States." (*Id.* at p. 42180.)

Plaintiffs also assert that 54 Federal Register 42146 provides that only a state agency, not a private contractor, may approve supportive services, such as child care and transportation. Because such services are approved by private contractors under the County's CalWORKS program, plaintiffs argue the County is in violation of federal law. This argument is also unavailing. Actually, 54 Federal Register 42146 only discusses the fact that the state agency must determine appropriate *criteria* to determine if supportive services are warranted. (See 54 Fed.Reg. 42146, 42220.) Nowhere does it state that the actual decision to approve supportive services for a particular participant must only be done by a state agency employee.

In sum, we conclude that the County's contracting out of case management functions under the CalWORKS program did not violate either state or federal law as it existed in 1996. Therefore, the contracts with the private contractors did not violate the terms of section 10619 and that portion of the judgment in plaintiffs' favor that is based upon a violation of section 10619 must also be reversed.

## VII. *Attorney Fees*

Defendants assert that if we reverse the court's judgment in this matter, we must also reverse the court's award to plaintiffs of attorney fees as they are no longer the prevailing party in this matter. They are correct that the attorney fee award cannot stand based upon our disposition of this matter. (See *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402 [267 Cal.Rptr. 62] [An order awarding attorney fees "falls with a reversal of the judgment on which it is based"].)

We leave it to the trial court to determine if attorney fees should be awarded to plaintiffs under Code of Civil Procedure 1021.5[9] given that plaintiffs' challenge to the contracts based upon the County Charter is only being reversed based upon the mootness of that claim, and the County voluntarily performed an economy and efficiency determination as to the extended contracts with independent contractors after judgment was entered in plaintiffs' favor. We also leave it to the trial court to determine who, if anyone, is the prevailing party on this appeal.

### DISPOSITION

The judgment is reversed and the matter is remanded to allow plaintiffs' claim that contracting out case management functions under the CalWORKS program is not more economical and efficient than having these functions be performed by civil service employees proceed to a determination, consistent with this opinion. The court is further ordered to dismiss as moot plaintiffs' claim challenging the validity of the contracts on the basis that the County violated the County Charter by failing to perform an economy and efficiency determination prior to contracting. The order awarding plaintiffs attorney fees is reversed. The parties are to pay their own costs on appeal.

McIntyre, J., and McConnell, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 23, 2002. Moreno, J., was of the opinion that the petition should be granted.

---

[9]See footnote 3, *ante.*