Filed 4/11/23  P. v. Wynn CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SHAWN ANTHONY WYNN JR.,<br><br>    Defendant and Appellant. | D080415<br><br>(Super. Ct. No. INF1401863) |

APPEAL from an order of the Superior Court of Riverside, John D. Molloy, Judge.  Affirmed.

Kenneth H. Nordin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan L. Amann and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

In 2017, a jury convicted Shawn Anthony Wynn, Jr. of first degree murder and found true the special circumstance allegation that he

intentionally killed the victim while an active participant in a criminal street gang. Wynn was sentenced to life in prison without the possibility of parole. In 2021, Wynn filed a petition for resentencing under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which amended the "felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1 subd. (f).) The law also provided a mechanism for resentencing individuals whose convictions would not meet the new standard. (Pen. Code, § 1172.6.[1])

After appointing counsel, the trial court issued an order to show cause on Wynn's petition for resentencing and conducted an evidentiary hearing. Wynn, however, did not appear at the hearing and made no waiver of his appearance. Thereafter, the court denied the petition, finding the relief afforded by the new law was not available because the record of conviction showed Wynn's intent to kill. Wynn now challenges the trial court's denial on procedural grounds, asserting he is entitled to a new evidentiary hearing in light of the fact that he was not present during the proceedings. We conclude the plea was properly considered by the trial court and that Wynn has failed to show prejudicial error because his presence at the hearing would not have altered the outcome. Accordingly, we affirm the trial court's order denying Wynn's petition.

---

[1] At the time Wynn filed his petition for resentencing, section 1170.95 governed the resentencing of murder convictions. Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10.) We will refer to the statute in its renumbered form.

2

BACKGROUND

A.    *Factual Background*

The following background is taken from this court's opinion in *People v. Wynn* (Dec. 18, 2018, D074580) [nonpub. opn.]:

"On the night of June 16, 2014, Juan H., Omar G., and Raul G. were parked on a residential street when a shot was fired through their car's rear window, hitting Juan H. in the back of the head and killing him. According to Omar and Raul's testimony, after the fatal shot was fired, an additional one or two shots were fired but those shots did not hit the car. A vehicle then started up and sped past them, out of the neighborhood. Immediately before the shots, Raul heard a voice from behind the car saying, 'What are you guys doing here?' Police officers later found two shell casings on the street in the vicinity of the shooting.

"Based on a recording from a home security camera in the neighborhood, police eventually identified Wynn's vehicle as being involved in the shooting. After being shown the security camera video by police, Wynn claimed that he had allowed other people to use his vehicle, and that he was not present during the shooting. Wynn provided accurate information to police about the residences of the people he claimed were involved in the shooting and led them to the firearm used during the shooting, which he claimed he knew about because of text messages that he had reviewed on someone else's phone. Wynn told police that although he believed at least one person involved in the shooting was a member of the South Side Indio gang, he 'didn't really know anything about the street gangs in Indio.'

"Subsequently, other evidence, which was presented at trial, connected Wynn more closely to the shooting and to the South Side Indio gang and led to his conviction in this case.

"First, police obtained two photographs taken on June 17, 2014, the day after the shooting, which depicted Wynn with known South Side Indio gang members and showed Wynn wearing clothing and making hand signs that connected him to the South Side Indio gang.[] In one photo, Wynn (1) is wearing a St. Louis Cardinals hat, which is associated with the South Side

3

Indio gang;[] (2) is wearing a custom-made T-shirt stating 'Sur Town Locos,' which is another name for the South Side Indio gang; (3) has a blue bandana in his pocket, which is commonly displayed by Southern California Hispanic gangs; (4) is making an 'I' sign with his hands while another person in the photo is making an 'S' sign, to represent 'South Indio;' and (5) is posing with two known South Side Indio gang members, known by the monikers 'Slugger' and 'Monster,'[] both of whom are wearing clothing associated with the South Side Indio gang, and one of whom is displaying a gun in his waistband. The second photo depicts Wynn, Slugger and an unknown person. In the photo, Slugger is wearing a St. Louis Cardinals hat. Wynn is wearing a hat that may be a St. Louis Cardinals hat as in the other photo, but the hat is partly obscured and thus not identifiable. Finally, Wynn is making an 'S' sign with his hands, in a manner unique to the South Side Indio gang.

"Second, Wynn's grandmother spoke to police about statements that Wynn made to her about the shooting. A recording of her interview with police was played for the jury, and she also testified at trial. According to the grandmother, on the night of the shooting, Wynn was acting strange and asked her, ' "What would you do if you seen somebody be killed." ' During the conversation, Wynn told her that he saw someone get shot but did not provide other information. Days later, according to the grandmother, Wynn gave her more details about the shooting. Wynn told her that he was in his vehicle with four other men, including Slugger and Monster. When Wynn parked at a house where they planned to get drugs, Slugger put Monster's gun in Wynn's hand and wanted him to shoot someone. Wynn told the grandmother that Slugger was yelling something about the victim having a 'P' on his hat.[] The grandmother told police that Wynn said he fired the first shot, but it was only 'a warning shot.' Specifically, Wynn told her 'that he got out of the truck–I guess they wanted him to shoot the guy or (unintelligible). He said he got out of the truck with the gun, shot one shot in the air and then Slugger grabbed the gun from him and went over there and shot.'

"Finally, a woman who knew Wynn and was at Wynn's residence on the night of the shooting testified that Wynn arrived

4

home that night and appeared to be upset, scared and paranoid. Wynn stated something such as, 'We just messed up and shot somebody.' The woman also testified that during her various interactions with Wynn, he indicated that he was involved with the Sur Town Locos gang, and that his gang moniker was 'Troubles.'

"[¶] . . . [¶]

"Wynn testified at trial and admitted that he was present during the shooting, but he did not admit to firing any shots. According to Wynn's testimony, he started spending time with Slugger and Monster approximately two weeks before the shooting, although he briefly knew Monster several years earlier in juvenile hall. Because Wynn was the only person in the group with a vehicle, he would often drive the others around. On the night of the shooting, Slugger, Monster and Slugger's younger brother were passengers in his vehicle, and he drove them to meet a friend of Slugger with whom they planned to smoke methamphetamine. According to Wynn, when Slugger told him to turn around and park the vehicle, he assumed they were at their destination. Without any discussion of what was to occur, Slugger got out of the vehicle, pulled a gun out of his waistband, ran up the street, and started shooting at another vehicle. According to Wynn, he heard three shots. Slugger got back into the vehicle and instructed Wynn to drive away.

"Wynn testified that his grandmother misunderstood what he told her about the details of the shooting. According to Wynn, he told his grandmother that *if he could have done so* he would have exited the vehicle and would have fired a warning shot to allow the victims to escape. When asked about the photographs showing him in gang-related clothing and displaying gang-related hand signs, Wynn testified that on the morning after the shooting, Slugger asked Wynn to drive him and Monster to a store, where Slugger purchased for Wynn the shirt with the custom-applied Sur Town Locos insignia. According to Wynn, he posed in the photograph wearing the shirt, the St. Louis Cardinals hat, and the blue bandana because it was Slugger's idea to take the photograph, and he was too scared of Slugger and Monster to refuse. He owned and wore the St. Louis Cardinals hat before the shooting because he and Slugger had earlier

5

acquired matching hats. Wynn stated that he made an 'I' sign with his hands in one of the photographs because Slugger told him to do so. However, when asked if he made the 'S' sign with his hands in the other photograph because someone told him to do so, Wynn stated that he did not recall. He also did not recall whether the partially visible hat in the second picture was a St. Louis Cardinals hat. Wynn admitted to knowing that Slugger and Monster were both members of the South Side Indio gang. However, when asked if he was a 'member of South Side Indio' when the photographs were taken, Wynn did not give a meaningful response. Wynn stated, 'I don't know. I don't know how to answer that, the question.' " (*Wynn, supra*, D074580.)

Wynn was charged with murder (count 1; Pen. Code, § 187, subd. (a)[2]), active participation in a criminal street gang (count 2; § 186.22, subd. (a)), and felon in possession of a firearm (count 3; § 29800, subd. (a)(1)). The information alleged that as to count 1, Wynn was a principal and that someone who was a principal personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subds. (d), (e)); that Wynn acted as a principal in the commission of the crime for the benefit of, at the direction of, and in association with a criminal street gang (§ 12022.53, subd. (e)); that Wynn committed the offense for the benefit, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)); and that he intentionally killed the victim while he was an active participant in a criminal street gang and the murder was carried out to further the activities of the criminal street gang (§ 190.2, subd. (a)(22)). The information also alleged a prior strike (§§ 667, subds. (c) & (e)(1) and 1170.12, subd. (c)(1)) and a prior serious felony (§ 667, subd. (a)).

The jury convicted Wynn of all charges and found true all of the allegations. He was sentenced to a determinate sentence of 34 years plus an

_____

2      Subsequent undesignated statutory references are to the Penal Code.

6

indeterminate sentence of life without the possibility of parole. On appeal, this Court affirmed the judgment but remanded the matter for resentencing. On remand, the trial court stayed the sentence for count 3 pursuant to section 654 and modified the determinate sentence to five years, but otherwise reimposed the original sentence. Wynn again appealed, and this court affirmed the judgment.

B.     *Resentencing Proceedings*

On July 19, 2021, Wynn filed the present petition for resentencing pursuant to section 1172.6 alleging that the information filed against him allowed the prosecution to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine, that he was convicted at trial of first or second degree murder under those theories, and that he could not be convicted of murder or attempted murder because of the changes made by Senate Bill 1437. Wynn's petition further alleged that he was not the actual killer, did not with intent to kill aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in committing first degree murder, and was not a major participant in the felony who acted with reckless indifference to human life, and the victim was not a peace officer.

The Riverside District Attorney filed an opposition brief to the petition, asserting that Wynn was not eligible for relief under the law because he was convicted of deliberate, premeditated first degree murder with intent to kill. The opposition also asserted that relief was not available because the jury found Wynn intentionally killed the victim in its verdict on the gang special circumstance allegation. Wynn did not submit a reply to the opposition.

The trial court issued an order to show cause, appointed counsel for Wynn, and called the matter for hearing on April 15, 2022. At the hearing, Wynn was represented by his appointed counsel who stated that Wynn was

7

not present. Both parties submitted on the briefing, and the court found the people had carried their burden to show that Wynn "intentionally killed" the victim and denied the petition. Wynn timely appealed from the order.

DISCUSSION

I

" 'A defendant has the constitutional right to be personally present in court "where necessary to protect the defendant's opportunity for effective cross-examination, or to allow him to participate at a critical stage and enhance the fairness of the proceeding." ' [Citations.] The right is guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, as well as article 1, section 15 of the California Constitution. [Citation.] The state constitutional right to be present is generally coextensive with the federal due process right." (*People v. Basler* (2022) 80 Cal.App.5th 46, 57 (*Basler*).)

"Critical stages of a defendant's criminal prosecution include the imposition of sentence, a sentence modification hearing, and resentencing. (See *People v. Nieves* (2021) 11 Cal.5th 404, 508; *People v. Guerrero* (2022) 76 Cal.App.5th 329, 335 [court erred by proceeding in defendant's absence with resentencing hearing where it was to consider youth-related mitigating factors when exercising its discretion to select an appropriate sentence]; *People v. Cutting* (2019) 42 Cal.App.5th 344, 347–348 [defendant had federal constitutional right to be present at resentencing hearing following a change in the law applicable to an enhancement initially imposed by the lower court]; *People v. Simms* [2018] 23 Cal.App.5th [987,] 996–997 [defendant's right to be personally present 'extends to sentencing and resentencing proceedings'; contested factual issues in Prop. 47 eligibility determination implicated defendant's constitutional right to be present]; *People v. Sanchez*

8

(2016) 245 Cal.App.4th 1409, 1414, citing *People v. Robertson* (1989) 48 Cal.3d 18, 60, 62; see *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 [where court is expected to exercise its sentencing discretion and restructure the entire sentencing package, the proceeding is properly characterized as a critical stage]; §§ 977, subd. (b)(1) [defendant 'shall be personally present ... at the time of the imposition of sentence'], 1193 ['defendant shall be personally present when judgment is pronounced,' unless presence is properly waived].)" (*Basler, supra*, 80 Cal.App.5th at p. 57.)

"The defendant can waive his right to be present, but the waiver must be ' "voluntary, knowing and intelligent." ' " (*Basler, supra*, 80 Cal.App.5th at p. 57.) "At a minimum, there must be some evidence that defendant understood the right he was waiving and the consequence of doing so." (*People v. Davis* (2005) 36 Cal.4th 510, 532.) Where "[t]here is no evidence that defense counsel informed defendant of his right to attend the hearing" or "that defendant understood that by absenting himself from the hearing he would be unable to contribute," there is no waiver of the right to be present. (*Ibid*.)

"A violation of the federal constitutional right must be assessed for prejudice under *Chapman v. California* (1967) 386 U.S. 18, 24." (*Basler, supra*, 80 Cal.App.5th at p. 59.) Under this standard, "we ask whether [the defendant's] absence was harmless beyond a reasonable doubt." (*Ibid*.)

II

The People do not contest Wynn's assertion that the evidentiary hearing on his petition under section 1172.6 was a critical stage of the criminal prosecution, which Wynn had a constitutional right to participate in, and that Wynn did not waive his right to be present at the hearing. Instead, they argue that the error is not reversable because Wynn's absence was

9

harmless beyond a reasonable doubt.  We agree.  Because the record shows that Wynn's jury found he was either the killer, or a direct aider and abettor of the murder, who harbored the requisite intent to kill, Wynn is ineligible for resentencing under section 1172.6.  Unlike the defendant in this court's decision in *Basler*, on which Wynn relies, nothing Wynn could contribute to the hearing would alter this finding.

To protect the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability" (Stats. 2018, ch. 1015, § 1, subd. (d)), the Legislature enacted Senate Bill 1437 to narrow the scope of liability under the felony murder rule (and under the natural and probable consequences doctrine), and to provide a mechanism by which individuals convicted under the old standard could petition for resentencing if they could not be convicted under the new, narrower standard.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Senate Bill 1437 effectuated its legislative goal by amending section 188, which defines malice, and section 189, which defines the degrees of murder.  (Stats. 2018, ch. 1015, §§ 2 & 3.)  As amended, section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)  Amended section 189, subdivision (e) states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual

10

killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The Legislature also enacted section 1172.6, which established the "procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 957.) Under section 1172.6, if the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner could still be convicted under the newly narrowed standards. (§ 1172.6; see *Lewis*, at p. 960.) "If the prosecution fails to sustain its burden of proof, the prior conviction ... shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3); see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 249.)

A person who *intends* to kill does not fall within the provisions of section 1172.6. Accordingly, when the jury finds a person had the intent to kill, that person is necessarily ineligible for relief as a matter of law. (*People v. Medrano* (2021) 68 Cal.App.5th 177, 183, 186 (*Medrano*).) The jury made such a finding here. Wynn was convicted of first degree premeditated murder. Pursuant to CALCRIM No. 520, the jury was instructed that to reach this verdict, it had to find the People proved beyond a reasonable doubt that Wynn committed an act that caused the death of another person and when he acted, he did so with malice aforethought. In addition, pursuant to CALCRIM No. 521, the jury was instructed that "[t]he defendant is guilty of first degree murder if the People have proved that he acted willfully,

11

deliberately, and with premeditation. The defendant acted willfully if he intended to kill."

The jury was also instructed on direct aiding and abetting first degree premeditated murder.[3] If the jury convicted on this theory, and not on the theory that Wynn was the actual killer, the result would be no different. " 'Liability for intentional, target offenses is known as "direct" aider and abettor liability; liability for unintentional, nontarget offenses is known as the " ' "natural and probable consequences' doctrine." ' " [Citation.] 'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' " (*Medrano, supra*, 68 Cal.App.5th at p. 183.)

The jury's finding under these instructions—that Wynn either killed the victim or directly aided and abetted the murder with malice aforethought—precludes, as a matter of law, relief under section 1172.6. Further, unlike *Basler*, any testimony Wynn may have offered at the hearing

---

[3] The court read the jury modified versions of CALCRIM No. 400 and 401. The first stated, "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."

The version of CALCRIM No. 401 read to the jury stated, in relevant part, "To prove that the defendant is guilty of a crime based on aiding, and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime;[¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

12

would have been of no legal significance. In *Basler*, the defendant's jury *was* instructed on natural and probable consequences. (*Basler, supra*, 80 Cal.App.5th at pp. 52–53.) Thus, in *Basler* there was at least the potential that any evidence or assistance the defendant may have offered at the hearing would have been legally consequential, to the extent it could weigh upon whether or not he acted with malice.

Here, Wynn's jury was not instructed on the natural and probable consequences doctrine. The only theories of first degree murder presented to the jury in the instructions were deliberate, premeditated, first degree murder and direct aiding and abetting first degree murder. The critical question for purposes of section 1172.6—whether Wynn acted with malice— was answered as a matter of law by the jury's verdict.[4] Accordingly, Wynn's absence from the evidentiary hearing would not have affected the court's ruling and was harmless beyond a reasonable doubt.

---

[4] The People also assert that the jury's special circumstance finding under section 190.2, subdivision (a)(22) establishes Wynn is ineligible for relief since that provision required the jury to conclude that he "intentionally killed the victim while [he] was an active participant in a criminal street gang." As both parties note, the issue of whether a jury finding under this provision conclusively establishes the intent required to bring a defendant outside the relief afforded by section 1172.6 is currently pending before the California Supreme Court in *People v. Curiel* (Nov. 4, 2021, G058604) [nonpub. opn.], review granted Jan. 26, 2022, S272238. Resolution of this issue is unnecessary to resolve Wynn's appeal since the jury's first degree murder conviction is sufficient to exclude Wynn from eligibility. Therefore, we decline to reach this question. (See *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [" '[T]he appellate court cannot ... declare principles or rules of law which cannot affect the matter in issue in the case before it.' "].)

## DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DO, J.